1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                    - - -

4     THE HONORABLE ROBERT J. KELLEHER, JUDGE PRESIDING

5                    - - -

6   BAPPI LAHIRI,                    )
                                     )
7                    PLAINTIFF,      )
                                     )
8        VS.                         ) CV02-8330-RJK
                                     )
9   UNIVERSAL MUSIC & VIDEO; ET AL.,)
                                     )
10                   DEFENDANT(S).   )
   _____   )
11  SAREGAMA INDIA, LTD.,            )
                                     )
12                   PLAINTIFF,      )
                                     )
13       VS.                         ) CV02-9856
                                     )
14  YOUNG; ET AL.,                   )
                                     )
15                   DEFENDANTS.     )
   _____   )
16

17

18          REPORTER'S TRANSCRIPT OF PROCEEDINGS

19             LOS ANGELES, CALIFORNIA

20            MONDAY, DECEMBER 4, 2006

21  ----------------------------------------------------------

22                GAIL PEEPLES,CSR
               CONTRACT COURT REPORTER
23          100 UNITED STATES COURTHOUSE
               312 NORTH SPRING STREET
24          LOS ANGELES, CALIFORNIA 90012
                  (213) 219-8455
25

```
 1     APPEARANCES

 2     IN BEHALF OF THE PLAINTIFF BAPPI LAHIRI:

 3     LAW OFFICE OF ANTHONY KORNARENS
       BY:  ANTHONY KORNARENS,ESQ.
 4     1640 FIFTH STREET, SUITE 214
       SANTA MONICA, CALIFORNIA 90401
 5

 6     IN BEHALF OF THE PLAINTIFF SAREGAMA INDIA LTD.;

 7     EMLING FORENSIS PC
       BY:  MICHAEL J. EMLING
 8     100 OCEANGATE, SUITE 1200
       LONG BEACH, CALIFORNIA 90802
 9

10     AND

11     JOSEPH E. PORTER, III
       206 3RD STREET
12     SEAL BEACH, CA 90740

13     IN BEHALF OF THE DEFENDANTS:

14     JEFFREY GOLDMAN

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 4, 2006; 1:42 P.M.

 2                              - - -

 3            THE CLERK:  CASE NUMBER 2, CIVIL DOCKET NUMBER

 4   02-830-RJK, BAPPI LAHIRI VERSUS UNIVERSAL MUSIC AND VIDEO, ET

 5   AL, AND ALSO THE CONSOLIDATED CASE CIVIL DOCKET NUMBER

 6   02-9856-RJK, SAREGAMA INDIA LIMITED VERSUS YOUNG, ET AL.

 7                WILL COUNSEL PLEASE STATE THEIR APPEARANCES.

 8            MR. KORNARENS:  GOOD AFTERNOON, YOUR HONOR.

 9   ANTHONY KORNARENS FOR PLAINTIFF BAPPI LAHIRI.

10            THE COURT:  WELCOME, SIR.

11            MR. PORTER:  JOSEPH E. PORTER, III, CO-COUNSEL FOR

12   SAREGAMA.

13                IT'S A PLEASURE TO APPEAR, YOUR HONOR.

14            MR. EMLING:  GOOD AFTERNOON.  MICHAEL EMLING, ALSO

15   CO-COUNSEL FOR SAREGAMA.

16            MR. GOLDMAN:  GOOD AFTERNOON, YOUR HONOR.  JEFF

17   GOLDMAN FOR THE DEFENDANTS.

18            THE COURT:  THE COURT HAS BEFORE IT A

19   PRE-CONFERENCE SCHEDULE.  AND THERE HAS BEEN SUBMITTED A

20   PROPOSED PRETRIAL CONFERENCE ORDER, WHICH HAS BEEN REVIEWED

21   FULLY, AS WELL AS THE REST OF THE RECORD BY THE COURT IN

22   PREPARATION FOR TODAY'S PROCEEDING.

23            I WAS STRUCK BY SO MANY MATTERS THAT OUGHT TO HAVE

24   THE ATTENTION OF COURT AND COUNSEL.

25            FIRST OF ALL, THERE'S A WHOLE COLLECTION OF
```

1    SO-CALLED IN LIMINE MOTIONS.  I WANT TO TELL YOU THAT

2    ORDINARILY I DON'T REVIEW SO-CALLED IN LIMINE MOTIONS ON THE

3    EVE OF TRIAL ABSENT SOME COMPELLING REASON TO DO SO BECAUSE

4    USUALLY THOSE ARE MATTERS BETTER ATTENDED TO AT THE TIME THEY

5    ARISE IN THE TRIAL.  AND, AS A RESULT, THE COURT IGNORES THEM

6    AT THE MOMENT EXCEPT THE FACT THAT THEY ARE BEFORE THE

7    COURT.

8             NOW, IF THERE ARE ANY ONE OF THOSE IN LIMINES --

9    AND YOU BOTH RECEIVED -- BRING SOME.  IS THERE ANY ONE OF YOU

10   WHO FEELS THAT THERE'S A COMPELLING REASON TO RULE

11   PRETRIAL -- AND THAT IS, RIGHT NOW -- ON ANY ONE OF THOSE

12   SO-CALLED MOTIONS?

13            MR. KORNARENS:  ON BEHALF OF PLAINTIFFS, NO, YOUR

14   HONOR.

15            MR. GOLDMAN:  ON BEHALF OF THE DEFENDANTS, I THINK

16   THE ANSWER IS THE SAME, NO.  THE ONLY THING I WOULD ASK YOUR

17   HONOR -- OR WOULD MENTION TO THE COURT IS THAT TWO OF OUR

18   MOTIONS, ONLY ONE OF WHICH IS OPPOSED, BUT TWO OF OUR MOTIONS

19   IN LIMINE DEAL WITH THE NATURE AND EXTENT OF THE EXPERT

20   TESTIMONY TO BE GIVEN BY THE OTHER SIDE.  AND, OBVIOUSLY,

21   THOSE WOULD HAVE TO BE RULED ON BEFORE THE EXPERTS WERE TO

22   TESTIFY.

23            THE COURT:  YES.  AND THAT MOTION RAISES ALL THE

24   QUESTIONS ENCOUNTERED FOR A NUMBER OF RECENT YEARS IN EXPERT

25   OR OPINION TESTIMONY.  AND IT LENDS ITSELF, PERHAPS, BEST OF

1    ALL, TO DEFERRED RULINGS.

2              HAVE THERE BEEN EXCHANGED BETWEEN THE PARTIES

3    EXPERTS' WRITTEN POINTS --

4              MR. GOLDMAN:  YES, YOUR HONOR.

5              THE COURT:  THAT IS, ALL EXPERT OPINIONS WHICH ARE

6    ANTICIPATED TO BE CALLED HAVE BEEN REDUCED TO WRITING AND

7    EXCHANGED BETWEEN THE PARTIES.

8              IS THAT A CORRECT UNDERSTANDING?

9              MR. GOLDMAN:  YES, YOUR HONOR.

10             (ALL COUNSEL RESPOND "YES, YOUR HONOR" AT THE SAME

11    TIME.)

12             THE COURT:  AND YOU UNDERSTAND, I GATHER, THAT THE

13    PROCEDURE WE FOLLOW HERE WITH RESPECT TO EXPERT OPINIONS IS

14    THAT THE PARTY CALLING THE EXPERT DOES CALL HIM, HE'S SWORN

15    ON THE STAND, AND HIS DIRECT TESTIMONY CONSISTS OF THE

16    READING OF HIS WRITTEN REPORT, FOLLOWED BY CORRECTIONS.  AND

17    THAT'S THE PARAMETER -- OR THOSE ARE THE PARAMETERS OF EXPERT

18    TESTIMONY WHICH WE DO PERMIT.

19             IT'S UNDERSTOOD THAT WE PROCEED THAT WAY, IS IT?

20             MR. PORTER:  YES, YOUR HONOR.

21             (ALL COUNSEL RESPOND "YES, YOUR HONOR" AT THE SAME

22    TIME.)

23             THE COURT:  THERE'S SOME QUESTION AS TO ONE OF THE

24    PROPOSED EXPERTS YOU'RE REFERRING TO AS NOT AN EXPERT.  NOT A

25    CPA OR NOT QUALIFIED BY EXPERT SPECIAL EDUCATION, TRAINING,

1    AND EXPERIENCE.

2              THAT IS TRUE, IS IT?

3              WHO IS IT?

4              MR. KORNARENS:  THAT WOULD BE MR. TISDALE, YOUR

5    HONOR.

6              THE COURT:  AND WHAT ABOUT IT?  IS THAT SOMETHING

7    WE OUGHT TO ADDRESS NOW?

8              MR. KORNARENS:  THERE'S ALSO ANOTHER EXPERT, PETER

9    MANUEL, WHERE THE PLAINTIFFS ARE MAKING THE SAME CONTENTION.

10             THE COURT:  IS THAT --

11             MR. KORNARENS:  IN OTHER WORDS, THAT THE EXPERT IS

12   NOT QUALIFIED AS AN EXPERT --

13             THE COURT:  IS THAT THE ONE YOU BOTH ANTICIPATE

14   CALLING?

15             MR. KORNARENS:  WELL, PLAINTIFFS INTEND TO CALL

16   RAPHAEL TISDALE, AND I BELIEVE THE DEFENDANTS ARE CHALLENGING

17   MR. TISDALE.  DEFENDANTS INTEND TO CALL PETER MANUEL, AND

18   PLAINTIFFS ARE CHALLENGING MR. MANUEL.

19             THE COURT:  WHAT IS THE NATURE OF THE EXPERT

20   TESTIMONY HERE?  THAT IS, DEALING WITH REPORTS AND CLAIMS FOR

21   DAMAGES?

22             MR. GOLDMAN:  IN THE CASE OF MR. TISDALE, I BELIEVE

23   THAT'S LARGELY THE CASE, YOUR HONOR.

24             MR. EMLING:  YES.  AND MR. TISDALE WILL BE

25   TESTIFYING ABOUT THE ACCURACY OF DEFENDANTS' PROPOSED COST

1    OFFSETS AS SET FORTH IN THEIR REPORT.

2         THE COURT:  WELL, WILL THERE BE SOME AGREED FACTS

3    BETWEEN THEM AS TO WHAT THE REPORTS ARE AND THE AUTHENTICITY

4    OF THE REPORTS?  OR NOT?

5         MR. EMLING:  I DON'T THINK THERE'S VERY MUCH IN THE

6    WAY OF AGREED FACTS, YOUR HONOR.

7         BUT THERE ARE SOME AGREED FACTS IN THE --

8         THE COURT:  IN THE WAY OF WHAT?

9         THERE'S NOT MUCH IN THE WAY OF YOU SAID WHAT?

10        MR. EMLING:  AGREED FACTS.

11        IS THAT WHAT YOU'RE ASKING ABOUT?

12        THE COURT:  YES, I AM.

13        AT THE MOMENT I WAS ASKING AS TO THE ASSUMED FACTS

14   THAT WILL BE ADDRESSED BY THE EXPERT.  I MAKE THE SAME

15   INQUIRY THOUGH.  THIS STRANGE PRETRIAL CONFERENCE ORDER ON

16   THE ONE HAND SAYS "THERE ARE NO AGREED FACTS."  LATER ON IT

17   SAYS "THE FOLLOWING FACTS ARE ADMITTED BY THE PARTIES."

18        NOW, I DON'T KNOW WHAT THE DIFFERENCE IS BETWEEN

19   AGREED FACTS AND ADMITTED FACTS.

20        IS THERE ANY DIFFERENCE?

21        MR. GOLDMAN:  I BELIEVE, YOUR HONOR, THE

22   DISTINCTION THAT WE WERE ATTEMPTING TO DRAW, HOWEVER

23   INARTFULLY, WAS THAT WE AGREED ON CERTAIN FACTS BUT PERHAPS

24   WE DISAGREED ON WHETHER THOSE FACTS WERE RELEVANT OR

25   ADMISSIBLE.

1        THE COURT:  WELL, YOU KNOW, AT PRETRIAL CONFERENCE

2   THERE IS NOTHING MORE IMPORTANT TO THE COURT TO EXPLORE THAN

3   THE AGREED FACTS AND THE DISAGREED FACTS.  BECAUSE BY

4   CONSIDERING THE TWO TOGETHER, THERE EMERGE ISSUES TO BE

5   TRIED.  AND THE PARAMETER AND PURPOSE AT THE MOMENT IS FOR

6   THE COURT TO FIND OUT WHAT KIND OF A CASE IS HERE FOR TRIAL,

7   HOW MUCH TIME DOES IT NEED FOR THE TRIAL OF THE CASE.

8        OBVIOUSLY, WHEN THERE ARE A LOT OF ADMITTED FACTS

9   OR AGREED FACTS, THE ISSUES REMAINING TO BE TRIED AND

10  ACTUALLY CALLING FOR TESTIMONY BEFORE THE JURY IS NEGLIGIBLE.

11  AND IN THAT RESPECT, I CAN'T TELL WHAT THIS CASE IS ABOUT

12  REALLY.

13        WHO WANTS TO TELL ME WHAT IT'S ABOUT IN THAT SENSE?

14        MR. GOLDMAN:  I'LL TAKE A SHOT, YOUR HONOR, IF I

15  MAY.

16        THE COURT:  YES, SIR.

17        MR. GOLDMAN:  IT SEEMS TO US, AT LEAST FROM THE

18  DEFENSE SIDE, THAT THERE ARE REALLY THREE PRIMARY ISSUES TO

19  BE TRIED.  ISSUE NUMBER ONE IS THE ORIGINALITY OF THOSE

20  PORTIONS OF THE PLAINTIFFS' SONG THAT WERE ALLEGED TO HAVE

21  BEEN USED BY THE DEFENDANTS.

22        THE COURT:  AND HOW WILL THAT COME BEFORE THE JURY?

23        MR. GOLDMAN:  I SUSPECT THAT MR. LAHIRI, THE

24  ALLEGED AUTHOR OF THE PLAINTIFFS' SONG, WILL TESTIFY AS TO

25  HOW HE WROTE IT.

1          THE COURT:  WHAT DOES THAT MEAN "HOW HE WROTE IT"?

2          MR. GOLDMAN:  I BELIEVE THAT HE TESTIFIED HE WAS

3     ALONE IN A ROOM AND HE SAT DOWN AND WROTE THE SONG.  SO THERE

4     ARE NO CORROBORATING WITNESSES.

5          AND OUR EXPERT MUSICOLOGIST, MR. MANUEL, WILL

6     TESTIFY TO THE LACK OF ORIGINALITY OF WHAT MR. LAHIRI WROTE.

7          THE COURT:  AND WILL THE SONG BE PLAYED BEFORE THE

8     JURY?

9          MR. GOLDMAN:  I SUPPOSE THAT WILL BE UP TO THE

10    PLAINTIFFS.  BUT I SUSPECT THE ANSWER IS PROBABLY YES.

11         THE COURT:  WHAT DOES THE PLAINTIFF SAY?

12         MR. KORNARENS:  YES, YOUR HONOR, THE SONG WILL BE

13    PLAYED BEFORE THE JURY.  MR. TESTA AND MR. LAHIRI WILL

14    TESTIFY THAT HE AUTHORED IT.  AND, OF COURSE, HE REGISTERED

15    IT; AND THERE'S A PRESUMPTION OF VALIDITY AS TO THE FACTS

16    STATED IN THE REGISTRATION --

17         THE COURT:  YES.  BUT MY QUESTION WAS DIFFERENT.

18    MY QUESTION WAS WILL A JURY, AS PART OF THE EVIDENCE IN THE

19    CASE, HEAR THE DISPUTED SONG PLAYED?

20         MR. KORNARENS:  YES.

21         MR. EMLING:  YES, YOUR HONOR.

22         THE COURT:  AND THEY ARE TO USE THEIR JUDGMENT AND

23    DISCRETION AND THE RULES OF THE LAW THAT APPLY TO EVALUATE

24    THAT AS AN ISSUE FOR THEM TO DECIDE EITHER YES OR NO.

25         IS THAT NOT CORRECT?

1          MR. KORNARENS:  NO, I DON'T BELIEVE THAT IS

2     CORRECT, YOUR HONOR.  I DON'T BELIEVE THE DEFENDANTS HAVE ANY

3     EVIDENCE WHATSOEVER THAT'S ADMISSIBLE TO THE EFFECT THAT

4     MR. LAHIRI DID NOT WRITE THE SONG.  MR. MANUEL'S REPORT DOES

5     NOT SAY THAT HE DID NOT WRITE IT; IT SIMPLY SAYS THAT

6     PORTIONS OF INDIAN FOLK SONGS BEAR SOME SIMILARITY, AND OTHER

7     VAGUE REFERENCES LIKE THAT, TO MR. LAHIRI'S WORK.  AND

8     THERE'S NO --

9          THE COURT:  HOLD ON.

10         YOU ARE THEREBY TELLING ME THAT THE JURY MUST HAVE

11    EVIDENCE TO TELL THEM THAT THAT WHICH THEY HEARD IS IN SOME

12    WAY A COPY OF SOMETHING ELSE THEY HEARD?

13         MR. KORNARENS:  NO.  NO.  THE OTHER WAY AROUND,

14    YOUR HONOR.

15         MR. LAHIRI WILL PLAY HIS UNDERLYING SONG -- OR

16    HE'LL TESTIFY THE UNDERLYING SONG THAT HE WROTE WAS IN FACT

17    THE SONG THAT HE WROTE.

18         AFTER THAT, IN ANOTHER PHASE OF THE TRIAL, WE WILL

19    PLAY THE DEFENDANT'S SONG, WHICH INCORPORATES VERBATIM PARTS

20    OF MR. LAHIRI'S SONG.

21         SO THERE ARE TWO DIFFERENT STEPS TO THIS.  THE

22    INITIAL STEP --

23         THE COURT:  WELL, I TAKE IT FROM WHAT YOU NOW SAY

24    THERE CAN BE NO DISPUTE AS TO COPYING WITH THE EVIDENCE BEING

25    PRESENTED IN THE MANNER YOU PRESENT IT?

1           MR. KORNARENS:  CORRECT.  I BELIEVE THAT.

2           THE COURT:  I SEE.

3           AND THEY'LL HAVE AN INSTRUCTION ON THAT I SUPPOSE,

4    WILL THEY NOT?

5           MR. KORNARENS:  YES, WE WILL SUBMIT ONE, YOUR

6    HONOR.

7           MR. EMLING:  WE DON'T ENTIRELY AGREE WITH THAT,

8    YOUR HONOR.  IN FACT, THE COURT HAS ALREADY FOUND AT THE

9    SUMMARY JUDGMENT STAGE THERE ARE ISSUES OF FACT AS TO WHETHER

10   CONSTITUENT ELEMENTS OF THE PLAINTIFFS SONG THAT ARE ORIGINAL

11   WERE COPIED, WHICH IS THE STANDARD.

12          THE COURT:  YES.  I UNDERSTAND.  IN FACT, ONE OF

13   THE THINGS THAT PUZZLES THE JUDGE, AS WE SIT ON THE EVE OF

14   TRIAL, IS THIS IS SUPPOSED TO BE -- IS WHAT IS THE STATE OF

15   THE RECORD AS TO PREVIOUS RULINGS MADE ON SUMMARY JUDGMENT

16   MOTIONS AND WHAT IS LEFT IN THE CASE FOR TRIAL CONSIDERING

17   THOSE RULINGS.

18          MR. KORNARENS:  YOUR HONOR --

19          THE COURT:  WHO WANTS TO TELL ME WHAT THE SITUATION

20   IS IN THAT REGARD?

21          MR. KORNARENS:  I WILL, YOUR HONOR, ON BEHALF OF

22   THE PLAINTIFFS.  ANTHONY KORNARENS.

23          THE COURT HAS GRANTED SUMMARY JUDGMENT ON THE LOSS

24   OF CREDIT CLAIM.  SO THAT IS NO LONGER AN ISSUE IN THE CASE.

25   PLAINTIFFS WILL NOT BE PERMITTED TO PRESENT DAMAGES REGARDING

```
 1    THAT CLAIM, AND THERE WILL BE NO CLAIM ON THE LOSS OF CREDIT.

 2            THE COURT HAS ALSO GRANTED SUMMARY ADJUDICATION TO

 3    THE EFFECT THAT LAHIRI AND SAREGAMA, THE CO-PLAINTIFFS, OWNED

 4    A VALID COPYRIGHT.  SO THAT ISSUE HAS BEEN RESOLVED AS

 5    WELL --

 6            THE COURT:  LET ME PUT A QUESTION THERE.  THAT IS,

 7    THOSE TWO PLAINTIFFS JOINTLY ARE THE COPYRIGHT OWNERS.

 8            IS THAT WHAT YOU'RE SAYING?

 9            MR. KORNARENS:  YES, SIR.

10            THE COURT:  THERE WAS A DESPUTE AT ONE TIME?

11            MR. KORNARENS:  CORRECT.

12            THE COURT:  BUT THAT DISPUTE IS RESOLVED, IS IT?

13            MR. KORNARENS:  CORRECT.

14            THE COURT:  ALL RIGHT.  GO AHEAD.

15            MR. KORNARENS:  SO WHAT I BELIEVE IS LEFT FOR TRIAL

16    IS, AS MR. GOLDMAN HAS ARTICULATED, WHETHER OR NOT THE SONG,

17    THE UNDERLYING SONG AND THE RECORDING, WAS COPIED -- WE

18    BELIEVE IT WAS OBVIOUSLY -- AND IF SO, THE EXTENT OF THE

19    DAMAGES.

20            DAMAGES, BASED ON THE COURT'S PRIOR RULING, WILL BE

21    DETERMINED BY A COMBINATION OF LOSSES INCURRED BY PLAINTIFFS

22    AND PROFITS MADE BY DEFENDANTS -- OR THE VARIOUS

23    INDIVIDUALIZED DEFENDANTS AS IN THE EXTENT THE TWO ARE

24    DUPLICATIVE.  STATUTORY DAMAGES ARE NO LONGER A PART OF THE

25    CASE BASED ON THE COURT'S PRIOR RULING.
```

```
 1              THE COURT:  YOU EMPHASIZED THERE THE POINT I RAISED

 2    AS TO WHAT'S LEFT IN THIS CASE WHEN YOU TALK ABOUT THE

 3    EXPERTS AND HOW THEY WILL GIVE THEIR OPINION, I GUESS IT IS,

 4    AS TO WHAT THE PROFITS OR LOSSES WERE RESPECTIVELY.

 5              AND I ASKED PREVIOUSLY IS THERE ANY DISPUTE AS TO

 6    THE FACTS THAT ARE LAID BEFORE THE RESPECTIVE EXPERTS,

 7    SO-CALLED, AS FACTS.

 8              NOW I'M A LITTLE FURTHER.  ORDINARILY IN A CASE OF

 9    PROFITS OR LOSSES, THERE ARE VOLUMINOUS RECORDS PRESENTED.

10              THE RECORDS PRESENTED HERE, I TAKE IT, ARE NOT IN

11    DISPUTE AS TO THEIR AUTHENTICITY, ARE THEY?

12              MR. KORNARENS:  TO SOME EXTENT THEY ARE, YOUR

13    HONOR.  THE DEFENDANTS ARE RELYING ON A SUMMARY PREPARED IN

14    CONNECTION WITH LITIGATION, AND THEY'RE LUMPING TOGETHER ALL

15    OF THE DEFENDANTS IN TERMS OF EXPENDITURES AND MONIES

16    RECEIVED.  ALLOCATION OF MONIES RECEIVED AND ALLOCATION OF

17    EXPENDITURES AMONG THE VARIOUS SPECIFIC DEFENDANTS IS A KEY

18    ISSUE IN THE CASE.  AND THOSE FACTS ARE DISPUTED

19    UNFORTUNATELY.

20              THE COURT:  HOW ARE THOSE FACTS GOING TO BE

21    LITIGATED?

22              MR. KORNARENS:  THEY'RE GOING TO BE LITIGATED BY

23    PLAINTIFFS PRESENTING THE EVIDENCE THEY HAVE AS TO WHAT EACH

24    DEFENDANT MADE, TO THE EXTENT WE'VE BEEN ABLE TO GLEAN IT

25    FROM INCOMPLETE DISCOVERY RESPONSES, AND CHALLENGING THEIR
```

1    CLAIMED OFFSETS --

2            THE COURT:  ALL RIGHT.  ALL RIGHT.

3            SO IN OTHER WORDS, THERE WILL BE RESPECTIVELY BY

4    THE PARTIES PRESENTED SOME RECORDS SETTING FORTH NUMBERS AND

5    AS TO WHICH -- THE AUTHENTICITY AS TO WHAT THEY ARE.  THAT

6    IS, RECORDS OF DEFENDANT THUS AND SO AND SO ON, WILL NOT BE

7    DISPUTED BUT AS TO WHETHER THEY EFFECTIVELY REFLECT WHAT THEY

8    PURPORT TO REFLECT.

9            IS THAT A CORRECT UNDERSTANDING?

10           MR. KORNARENS:  YES, SIR.

11           MR. PORTER:  JOIN, YOUR HONOR.

12           MR. GOLDMAN:  IF YOU'RE WAITING FOR ME TO AGREE,

13   YOUR HONOR, I'M NOT SURE I DO.  BUT I'M NOT ENTIRELY SURE I

14   FULLY DISAGREE EITHER.

15           I THINK WHAT HAS HAPPENED IN THE CASE SO FAR IS WE

16   AS DEFENDANTS HAVE PRODUCED VOLUMINOUS DOCUMENTS.  THEY'RE

17   VOLUMINOUS BUSINESS RECORDS, THOUSANDS UPON THOUSANDS OF

18   PAGES OF BUSINESS RECORDS, WHICH REFLECT THAT THIS ALBUM WAS

19   EXTREMELY UNSUCCESSFUL.  THE DEFENDANT'S LOSSES ON THIS ALBUM

20   WERE IN THE MILLIONS OF DOLLARS.

21           AND THE PLAINTIFFS EXPERT, MR. TISDALE, WHO IS NOT

22   AN ACCOUNTANT, BY THE WAY, BUT SIMPLY A LAWYER --

23           THE COURT:  I LIKE THAT.

24           MR. GOLDMAN:  -- EVEN IF MR. TISDALE WERE ALLOWED

25   TO TESTIFY ABOUT THE ACCURACY OF OUR RECORDS -- WHICH WE

1    WOULD HOPE THE COURT WOULD NOT PERMIT -- EVEN IF HE WERE

2    PERMITTED TO DO THAT, HE HAS ADMITTED IN HIS DEPOSITION HE

3    DOESN'T CHALLENGE THE ACCURACY OF OUR RECORDS.  HE JUST SAYS

4    THINGS LIKE, "WELL, YOU SAY IT COSTS YOU A DOLLAR OR

5    SOMETHING TO MAKE A CD, I THINK CAN I GO GET A CD

6    MANUFACTURED FOR SIXTY-FIVE CENTS.  THAT'S WHAT I THINK IT

7    COSTS."

8            SO THAT'S THE NATURE OF MR. TISDALE'S PROFFERED

9    TESTIMONY IN REGARD TO THE DEFENDANT'S COSTS.

10           THE COURT:  YOU KNOW, THE WHOLE MATTER OF OPINION

11   EXPERT TESTIMONY HAS BEEN AT LEAST PUT TO CHALLENGE IN

12   CASE-BY-CASE METHOD.  AS YOU KNOW, THEY'VE NOW TOLD TRIAL

13   JUDGES THAT THEY ARE TO BE GATEKEEPERS, SOME KIND OF BURDEN

14   ON THE TRIAL JUDGE TO SAY THAT COMES IN AND THAT DOESN'T.

15           THE RULE ITSELF, AS YOU KNOW, PROVIDES EXPRESSLY

16   THAT IT SHALL NOT BE EXCLUDABLE EVIDENCE OF THE MERE FACT

17   THAT IT ADDRESSES THE FINAL ISSUE.  BUT ON THE OTHER HAND,

18   FOR A SET OF RECORDS, THE SAME SET I PRESUME TO BE CONSIDERED

19   BY TWO EXPERTS OR NON-EXPERTS OR WHATEVER THEY ARE, AND

20   EVIDENCE ADDUCED THAT IS IN CONFLICT IN THE SENSE THAT THE

21   JURY WILL BE HELPFUL FOR THE OPINION TESTIMONY AND HAS AN

22   ISSUE THAT THEY HAVE TO AGAIN DECIDE.

23           AND I DON'T YET SEE THAT THERE'S A CASE HERE MADE

24   IN WHICH THAT JURY WILL BE TOLD THAT IT'S ALL ALLOWED

25   NECESSARILY AND HELPFUL TESTIMONY FROM THE EXPERTS IN

1    CONSIDERING AND UNDERSTANDING THE DOCUMENTS THAT ARE IN

2    EVIDENCE BEFORE THEM.

3         I'LL NEED SOME PERSUASION ON THAT SCORE.  AND YOU

4    BETTER BEAR IN MIND, WHEN YOU GET TO IT, THAT I WILL HAVE

5    READ THE EXPERT OPINIONS AND I WILL HAVE SUBJECTED TWO OF

6    THEM TO THE GATEKEEPER TEST.

7         YOU KNOW, ON THE OTHER HAND, DESPITE THE FACT THAT

8    THE RULE IS VERY BROAD IN ALLOWING EVEN ULTIMATE FACTS TO

9    COME IN THROUGH EXPERT TESTIMONY, NEVERTHELESS, THE

10   FUNDAMENTAL THRESHOLD REQUIREMENT IS THAT BEFORE YOU MAY CALL

11   A WITNESS TO ADDRESS SOME PARTICULAR ITEM OF EVIDENCE AS AN

12   EXPERT IT MUST BE SHOWN WHATEVER THE EVIDENCE IS THE JURY

13   NEEDS THE HELP OF AN EXPERT.

14        BRAIN SURGERY.  BRAIN SURGERY AND SO MANY OTHER

15   SIMILAR THINGS OBVIOUSLY ARE BEYOND THE COMMON UNDERSTANDING

16   OF A JUROR AND NEED TO BE EXPLAINED AS TO WHAT THEY ARE AND

17   HOW THEY WERE DONE AND WHAT THE COMMONLY ACCEPTED PRACTICES

18   IS AND THE LIKE.

19        BUT WITH RESPECT TO THE EVIDENCE THAT'S HERE

20   CONSIDERED, WHO WANTS TO TELL ME WHY THE JURY NEEDS THE

21   TESTIMONY OF EITHER EXPERT?

22        MR. GOLDMAN:  WELL, YOUR HONOR, OUR EXPERT -- THE

23   DEFENDANT'S EXPERT IS NOT A ACCOUNTING EXPERT AT ALL.  WE'LL

24   HAVE AN IN-HOUSE WITNESS TESTIFY AS TO THE ACCURACY OF THE

25   DEFENDANT'S BUSINESS RECORDS.  OUR EXPERT IS A MUSICOLOGIST,

1    WHO WILL BE TESTIFYING ON A DIFFERENT POINT.  ON THE

2    ORIGINALITY OF THE PLAINTIFFS' SONG, THE SONG THAT WAS

3    ALLEGEDLY INFRINGED.

4            THE COURT:  THAT'S THE EXPERT TESTIMONY?

5            MR. GOLDMAN:  THAT'S THE DEFENDANT'S EXPERT.

6            THE PLAINTIFFS HAVE FOUR OR FIVE OR SIX EXPERTS.

7    I'M NOT SURE.  I'VE LOST COUNT --

8            THE COURT:  ON THAT ISSUE?

9            MR. GOLDMAN:  ON A VARIETY OF ISSUES.

10           ONE OF THE EXPERTS, MR. TISDALE, IS THE ATTORNEY

11   WHO WOULD BE TESTIFYING HE DOESN'T THINK OUR ACCOUNTING

12   DOCUMENTS ARE ACCURATE.

13           AND I WOULD AGREE WITH YOUR HONOR TO THE EXTENT

14   THAT YOUR HONOR AGREES WITH ME THAT MR. TISDALE IS NOT AN

15   APPROPRIATE WITNESS ON THAT POINT AND SHOULD NOT BE

16   TESTIFYING AND WOULD NOT BE HELPFUL TO THE JURY.

17           THE COURT:  WILL THERE BE ANYTHING UNUSUAL IN THE

18   FORM OF THE RECORDS?  THAT IS, EVERY BUSINESS MAINTAINS, IN A

19   PRETTY FORMAL AND DEFINITIVE WAY, BOOKS AND RECORDS IN WHICH

20   ENTRIES ARE MADE IN THE REGULAR COURSE OF BUSINESS AND

21   REGULARLY -- AND THAT THE ANSWER TO THE QUESTION PRESENTED

22   THAT IS PROPER PROFIT, LOSS AND, IF SO, HOW MUCH IS

23   DETERMINED BY ARITHMETIC CONSIDERATION OF THOSE NUMBERS.

24   WHAT'S DIFFERENCE HERE?

25           MR. EMLING:  I THINK THE POINT IS THE DEFENDANTS

```
 1    ARE RELYING ON A CONSTRUCTIVE PROFIT AND LOSS STATEMENT MADE

 2    FOR THE LITIGATION.  AND THERE'S PROBLEMS WITH IT.  THE

 3    PROBLEM IS THAT THERE ARE MULTIPLE ENTITIES INVOLVED AS

 4    DEFENDANT IN THIS CASE, AND THESE MULTIPLE ENTITIES WIND UP

 5    PAYING MONEY TO EACH OTHER IN THE CONTEXT OF THIS RECORD.

 6    AND, THEREFORE, PROFITS TO ONE OR THE OTHER OF THESE

 7    DEFENDANTS MAY --

 8              THE COURT:  WILL VARY.

 9              MR. EMLING:  -- THEY MAY BE DISGUIZED BY LUMPING

10    THEM ALL INTO ONE BUCKET.  THIS IS THE PROBLEM.

11              THE COURT:  THIS IS NOT UNUSUAL SITUATION.  YOU

12    HAVE A MUSIC MASTER COMPOSER.  OBVIOUSLY, IMPORTANT PERSON AS

13    FAR AS THE MUSIC IS CONCERNED.  YOU HAVE A LYRIC COMPOSER,

14    OBVIOUSLY OF INTEREST ALSO.  AND YOU HAVE THE USUAL MARKETING

15    EXPERTS AND PRODUCTION EXPERTS AND SALES EXPERTS.  AND THEY

16    ALL HAVE -- IN THIS CASE, SOME OF -- ALL OF THOSE PEOPLE HAVE

17    SOME ROLE THAT THEY PLAY IN PUTTING THIS ON THE MARKET.

18              IS THAT NOT CORRECT?

19              MR. GOLDMAN:  THAT'S TRUE, YOUR HONOR.

20              THE COURT:  AND IT'S CONTENDED THEN THAT IT CALLS

21    FOR PRETTY CAREFUL ANALYSIS.  ANYBODY CLAIMING EITHER PROFIT

22    ON THE PART OF SOMEBODY OR LOSS ON THE PART OF THEMSELVES

23    WOULD BE REQUIRED TO TREAT THOSE SEPARATE ISSUES IN A MANNER

24    THAT WOULD ENABLE IT -- THE JURY TO IDENTIFY WHAT OUGHT TO BE

25    CREDITED AND WHAT OUGHT TO BE DEBITED.
```

```
 1              IS THAT AGAIN A CORRECT UNDERSTANDING OF WHAT YOU

 2    PLAN TO DO?

 3              MR. KORNARENS:  YES, SIR.

 4              THE COURT:  WELL, ALL RIGHT.  WE CAN INDULGE A

 5    LECTURE THIS MORNING OF TIME ON A PRETRIAL CONFERENCE ONLY

 6    BECAUSE WE HAVE THESE TWO MATTERS ON.  AND I FOUND THAT 15

 7    MINUTES OF PRETRIAL WILL VERY FREQUENTLY REMOVE 15 HOURS FROM

 8    THE TIME NECESSARY TO TRY A CASE.  AND IT SEEMS TO ME THAT

 9    WE'RE MAKING PROGRESS IN THAT DIRECTION HERE IN WHAT WE'RE

10    DOING.  SO I INTEND TO CONTINUE ON A BIT WITH THIS.

11              HOW ABOUT SETTLEMENT?  HAS ANYTHING BEEN DONE BY

12    WAY OF EXPLORING SETTLEMENT IN THIS CASE?

13              MR. EMLING:  YOUR HONOR, ABOUT A YEAR AGO WE HAD

14    OUR CLIENTS OUT FROM INDIA, SAT DOWN WITH MR. GOLDMAN AND

15    REPRESENTATIVES OF UNIVERSAL FOR SOME VERY SERIOUS TALKS.

16    UNFORTUNATELY, AT THAT TIME THERE WERE STILL SOME SUMMARY

17    JUDGMENT MOTIONS OUTSTANDING, WHICH PERHAPS MADE IT A LITTLE

18    BIT DIFFICULT TO CALL THE CASE.  AND I THINK WE'RE READY TO

19    PROCEED TO PERHAPS A MAGISRATE JUDGE PRETTY SOON.

20              THE COURT:  DIDN'T IT GO TO A MAGISTRATE?

21              MR. EMLING:  NO.  IT WAS STRICTLY A GOOD FAITH

22    EFFORT, PRIVATE EFFORT, BETWEEN COUNSEL AND OUR CLIENTS.

23              THE COURT:  WHAT DO YOU SUGGEST NOW SHOULD BE DONE

24    IN THAT CONNECTION?

25              MR. GOLDMAN:  YOUR HONOR, THE LAST SETTLEMENT
```

1     PROPOSAL WAS MADE BY THE DEFENDANTS.  IT SEEMS TO ME THAT IT

2     WOULD MAKE SENSE FOR US TO SCHEDULE A SETTLEMENT CONFERENCE

3     WITH THE MAGISTRATE JUDGE ALSO FOR THE DEFENDANTS -- OR FOR

4     THE PLAINTIFFS, I'M SORRY, IF THEY WISH, TO MAKE A

5     COUNTEROFFER.

6          THE COURT:  AS YOU KNOW, THE RULE CALLS FOR

7     AGREEMENT BETWEEN COUNSEL AS TO WHICH OF THE THREE OPTIONS

8     SHALL BE ADOPTED.

9          MR. EMLING:  THE PLAINTIFFS WOULD AGREE WITH THE

10    MAGISTRATE OPTION.

11         THE COURT:  HOW ABOUT THE DEFENDANTS?

12         MR. GOLDMAN:  YES.  WE WOULD AGREE WITH THAT.

13         THE COURT:  DO YOU HAVE IN MIND A MAGISTRATE THAT

14    YOU WOULD ASK TO SERVE?

15         MR. KORNARENS:  I BELIEVE WE WERE GOING TO ASK

16    MAGISTRATE JUDGE TURCHIN, YOUR HONOR.

17         THE COURT:  YOU KNOW, A VERY STRANGE THING IN THE

18    WAY THEY RUN THIS COURT.  LONG AGO IN THE CLERK'S OFFICE,

19    THEY ADOPTED THE PRACTICE IN DRAWING A CASE FROM THE WHEEL

20    FOR A PARTICULAR JUDGE.  THEY PUT THE DATE, THE NUMBER OF THE

21    CASE, AND THE JUDGE'S INITIALS.  LONGSTANDING WAY IT WAS DONE

22    ALWAYS.

23         ALL OF A SUDDEN, THEY ADOPTED THE PRACTICE OF

24    PUTTING SOME MAGISTRATE'S INITIALS THERE TOO.  THE IDEA

25    WAS -- IT WAS MORE THAN AN IDEA -- THIS WAS THE MAGISTRATE

```
 1     WHO SHALL BE USED IN THIS CASE WHENEVER A MAGISTRATE IS USED.

 2          I PROTESTED TOTALLY IN THAT REGARD.  I SAID, "I

 3     DON'T REFER MATTERS TO MAGISTRATES.  ANY ROUTINE MATTERS I

 4     DECIDE WHAT, IF ANYTHING, GOES TO A MAGISTRATE.  MANY OF THE

 5     JUDGES REFER ALL THEIR DISCOVERY MATTERS THERE.  FOR EXAMPLE,

 6     THEY AUTOMATICALLY GO TO THAT MAGISTRATE.

 7          I DON'T DO ANY SUCH THING AS ALL.  AND I SAY TO

 8     LAWYERS, AS I SAY TO YOU, IF THERE ARE SOME INITIALS ON MY

 9     CASE, MAGISTRATE INITIALS, I'LL IGNORE THEM, UNLESS I DON'T

10     WANT TO IGNORE THEM.  AND THAT MAY BE THE JUDGE THAT IS

11     PICKED AS THE SETTLEMENT JUDGE OR IT MAY NOT.

12          DOES ANYONE KNOW THE MAGISTRATE?  DO WE HAVE

13     MAGISTRATE INITIALS ON THIS?

14          THE CLERK:  YES, YOUR HONOR.  THAT'S CORRECT.

15     MAGISTRATE JUDGE CAROLINE TURCHIN IS THE MAGISTRATE ON THIS

16     CASE.

17          THE COURT:  ALL RIGHT.

18          YOU UNDERSTAND WHAT HAS BEEN SAID AND WHAT THAT

19     MEANS?

20          CAROLINE TURCHIN IS THE DESIGNATED MAGISTRATE

21     JUDGE.  IS SHE SATISFACTORY TO YOU?

22          MR. GOLDMAN:  YES, YOUR HONOR.

23          MR. KORNARENS:  YES, YOUR HONOR.

24          THE COURT:  I'D RATHER HAVE YOU PICK YOUR OWN

25     JUDGE.  ALTHOUGH THERE'S A DRAWBACK TO THAT.  AND THAT IS
```

1    SOME MAGISTRATE WHOSE INITIALS HAVE NOT YET BEEN PICKED WILL

2    FREQUENTLY BE TOO BUSY TO GET AROUND TO IT UNTIL FIVE YEARS

3    LATER.

4            I WOULD ENTERTAIN AGREEMENT ON THE PART OF THE

5    COUNSEL FOR A REFERENCE TO A MAGISTRATE FOR SETTLEMENT

6    PURPOSES AGREED UPON UNANIMOUSLY.

7            YOU'RE PREPARED TO DO THAT, ARE YOU?

8            MR. KORNARENS:  YOUR HONOR IS FAMILIAR WITH THE

9    FACTS OF THE CASE.  DOES YOUR HONOR HAVE A SUGGESTION WHO

10   MIGHT BE THE MOST PRODUCTIVE MAGISTRATE?

11           THE COURT:  NO, I DON'T.  AND I STAY AWAY FROM

12   THAT.  I MADE MYSELF UNPOPULAR ENOUGH BY PICKING AND

13   CHOOSING.  AND, FRANKLY, I DON'T -- IN THIS CASE I DON'T

14   THINK IT TAKES A GIANT INTELLECT --

15           MR. KORNARENS:  YOUR HONOR --

16           THE COURT:  -- TO MAKE SENSE OF THIS AND DECIDE IT.

17           MR. KORNARENS:  MAGISTRATE JUDGE TURCHIN HAS BEEN

18   ASSIGNED TO THE CASE, SO THAT SHOULD BE OUR SETTLEMENT JUDGE

19   AS WELL.

20           THE COURT:  ALL RIGHT.  THERE WILL BE A ORDER

21   ENTERED REFERRING, FOR SETTLEMENT PURPOSES, THE CASE.

22           NOW, IN THE EVENT THAT IT IS NOT SETTLED, I'M --

23   THIS IS THE TIME WHEN IT SHOULD BE SET FOR TRIAL IF IT'S

24   GOING TO BE TRIED.

25           MR. KORNARENS:  CORRECT.

1          THE COURT:  AND I DON'T EVER SET A CASE FOR TRIAL

2     UNTIL AFTER A PRETRIAL ORDER HAS BEEN SIGNED.  AND I'LL LET

3     YOU HAVE A DATE WHICH WILL BE AT LEAST TENTATIVELY ADOPTED AS

4     THE TRIAL DATE IN THE EVENT WE HAVE TO TRY THE CASE.

5               WHAT DATE DO WE HAVE AVAILABLE; MS. CLERK?

6               THE CLERK:  TUESDAY, MARCH 6, 2007, AT 9:30.

7               THE COURT:  WHAT DO YOU SAY, GENTLEMEN?

8               MR. KORNARENS:  IT'S AGREED, YOUR HONOR.

9               MR. GOLDMAN:  IT'S FINE.

10              THE COURT:  ALL RIGHT.  IT'S SO ORDERED.

11          AND THAT DOES NOT IN ANY WAY MINIMIZE THE HOPES AND

12     ANTICIPATION OF THE COURT FOR SETTLEMENT OF THE MATTER.

13          THIS IS AN IDEAL CASE TO BE CONSIDERED AND DECIDED

14     BY ANY LEGALLY TRAINED PERSON OF MUTUAL CHOICE.  IT HAS A LOT

15     OF THOSE FACTORS IN IT THAT YOU'D WANT TO KNOW NOT ONLY THE

16     LEGAL SKILLS OF THE NEGOTIATOR, THE ARBITRATOR, WHATEVER HE'S

17     CALLED; THEREFORE, IT MAKES A DIFFERENCE WHO HAS THE JOB.

18          BUT FROM WHAT I KNOW OF THE CASE AND THE

19     MAGISTRATE, THIS CASE WOULD BE FAIR TO BE SETTLED.  AND

20     THEREFORE, ALTHOUGH WE HAVE A TENTATIVE TRIAL DATE SET WHICH

21     MAY BE USED, YOU'RE TO PROCEED WITH ALL DISPATCH TO COMPLY

22     WITH THE OBLIGATIONS UNDER THE LOCAL RULES FOR SETTLEMENT.

23              MR. GOLDMAN:  YOUR HONOR, MAY I ASK A QUESTION?

24              THE COURT:  YES, SIR.

25              MR. GOLDMAN:  MR. LAHIRI, ONE OF THE PLAINTIFFS,

```
 1    AND WHO HAS TO CERTAINLY AGREE TO ANY SETTLEMENT, RESIDES IN

 2    INDIA.  AND IN THE DEFENDANT'S VIEW, IT -- IT'S ABSOLUTELY

 3    ESSENTIAL -- OR CERTAINLY IT'S A VERY GOOD IDEA TO HAVE

 4    MR. LAHIRI PRESENT HERE FOR THE SETTLEMENT CONFERENCE.

 5              I REALIZE THAT'S AN IMPOSITION ON HIM.  AND --

 6    PERHAPS IF HE COULD BE AVAILABLE BY TELEPHONE THAT WOULD BE

 7    SUFFICIENT.

 8              BUT I THINK IT WOULD INHIBIT THE SETTLEMENT

 9    CONFERENCE IF MR. LAHIRI WASN'T ORDERED TO BE AVAILABLE FOR

10    THE FULL DAY OF THE SETTLEMENT CONFERENCE AT ANY TIME SO THAT

11    HE COULD BE CALLED AND PARTICIPATE FULLY IN THE SETTLEMENT

12    CONFERENCE.

13              THE COURT:  DO YOU HAVE IN MIND THE DESIRABILITY,

14    IF NOT THE NECESSITY, OF HIM BEING PRESENT FOR THE ABILITY TO

15    GET THE FINAL WORD "YES, IT'S ACCEPTABLE," OR DO YOU HAVE IN

16    MIND HE SHOULD BE PRESENT BECAUSE HE'S GOING TO BE CALLED AS

17    WITNESS BEFORE THE MAGISTRATE?  OR BOTH?

18              MR. KORNARENS:  YOUR HONOR, MR. LAHIRI WILL EITHER

19    BE PRESENT OR HE WILL BE AVAILABLE BY PHONE FOR THE ENTIRE

20    DAY WITHOUT A PROBLEM.  I CAN SAY THAT ON BEHALF OF HIM.

21    HE'S EAGER TO PARTICIPATE.

22              THE COURT:  ALL RIGHT.  I MAKE A REFERENCE TO THE

23    JUDGE -- TO THE MAGISTRATE JUDGE.  I DON'T SAY A WORD ABOUT

24    THE CASE GOOD, BAD, OR INDIFFERENT.  I DON'T EVEN

25    CHARACTERIZE YOU PEOPLE.  I DON'T CERTAINLY TELL THEM
```

1    ANYTHING ABOUT ANY DIRECTION IN WHICH I LEAN.  AND I DON'T

2    REQUIRE THAT THE SETTLING JUDGE OR THE ARBITRATOR, IF THAT'S

3    THE ROLE SERVED, MAKE ANY REPORT TO ME OTHER THAN YES OR NO

4    THE CASE IS DISPOSED OF OR IT ISN'T.  AND I DON'T WANT TO

5    HEAR ANYTHING OF THE IMPRESSIONS FORMED BY THE MAGISTRATE

6    JUDGE, GOOD, BAD, OR INDIFFERENT, FOR EITHER SIDE, PARTY, OR

7    SO ON.  THAT'S ONE PART.

8         THE OTHER IS WHEN THE EFFORTS ARE MADE, THE CASE

9    BECOMES ENTIRELY THE CASE OF THE MAGISTRATE JUDGE FOR ALL

10   PURPOSES WHILE PENDING THERE FOR SETTLEMENT.  THAT IS, THE

11   PROCEDURES TO BE FOLLOWED AND THE DATES TO BE FOLLOWED AND

12   THE AMOUNT OF TIME GIVEN AND THE KIND OF BRIEFS.  AND

13   OTHERWISE, YOU OUGHT TO BE TOLD WHAT TO DO ABOUT A

14   MAGISTRATE.

15        ANYTHING FURTHER?

16        MR. GOLDMAN:  NO, YOUR HONOR.

17        MR. KORNARENS:  NO, YOUR HONOR.

18        THE COURT:  MS. CLERK, DO WE WANT A FORMAL ORDER OF

19   REFERENCE OR JUST A MINUTE ORDER?

20        THE CLERK:  WELL, COUNSEL ACTUALLY SHOULD FILL

21   OUT -- THE COURT HAS A FORM, ADR-01, JUST TO MAKE IT KOSHER.

22        THE COURT:  ALL RIGHT.  GET WITH THAT, GENTLEMAN,

23   AND SEE THAT IT IS LODGED WITH THE CLERK AS SOON AS POSSIBLE.

24        MR. KORNARENS:  YES, YOUR HONOR.

25        THE COURT:  ANYTHING FURTHER?

1          MR. GOLDMAN:  NO, YOUR HONOR.

2           MR. KORNARENS:  NO, YOUR HONOR.

3          THE COURT:  ALL RIGHT.  WE'RE ADJOURNED.

4               (PROCEEDINGS RECESSED AT 2:14 P.M.)

5       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6       FROM THE RECORD OF THE PROCEEDINGS IN THE

7       ABOVE-ENTITLED MATTER PREPARED IN ACCORDANCE WITH

8       THE FORMATTING REGULATIONS OF THE JUDICIAL

9       CONFERENCE OF THE UNITED STATES.

10

11      _____   _____

12      GAIL PEEPLES                                     DATE
        COURT REPORTER
13

14

15

16

17

18

19

20

21

22

23

24

25